CASE NO. 08-5371
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KIRK D. JENKINS,

                                        Plaintiff-Appellant,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

                                        Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY AT LOUISVILLE

APPELLANT'S SUPPLEMENTAL BRIEF

VINCENT E. NOWAK
MULLIN HOARD & BROWN, LLP
500 South Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas 79120-1656
806.372.5050 Telephone
806.371.6230 Facsimile
venowak@mhba.com

ATTORNEY FOR APPELLANT,
KIRK D. JENKINS

Case: 08-5371   Document: 35   Filed: 01/07/2009   Page: 2

**Table of Contents**

| | | |
|---|---|---|
| I. | SUMMARY OF THE ARGUMENT | 1 |
| II. | PUBLIC LAW NO. 110-325 APPLIES TO THIS CASE. | 1 |
| III. | JENKINS QUALIFIES AS DISABLED UNDER PUBLIC LAW NO. 110-325 | 5 |
| IV. | THE COURT SHOULD EITHER REVERSE AND RENDER IN FAVOR OF JENKINS OR, AT THE VERY LEAST, REMAND FOR FURTHER PROCEEDINGS IN THE DISTRICT COURT CONSISTENT WITH PUBLIC LAW 110-325 | 8 |
| | CERTIFICATE OF SERVICE | 9 |

# Table of Authorities

**Cases**
*Bradley v. School Bd. Of Richmond*, 416 U.S. 696, 711 (2006) ....................................................... 4

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ....................................................... 1, 2, 3, 4

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) .................. passim

*Warner v. Ashcroft*, 381 F.3d 534 (6th Cir. 2004) ....................................................... 3

**Statutes**
Public Law 110-325 ....................................................... passim

**Other Authorities**
H.B. 3195 [EH], 109th Congress, 2007 ....................................................... 2, 3

## I. SUMMARY OF THE ARGUMENT

Appellant (Jenkins) contends in his appeal that the District Court improperly applied *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams* as the standard to determine whether Jenkins qualifies as disabled under the ADA. Recently, Public Law No. 110-325, which overturns *Toyota*, took effect. This Court has asked counsel to address the following three questions:

- Whether the Public Law applies to this case;
- Whether Jenkins qualifies as disabled under the Public Law; and
- Whether remand to the District Court is appropriate.

Jenkins answers as follows:

- Although the Public Law is "new," it was necessitated by the *Toyota* Court's misapplication of the original congressional intent with respect to the ADA. The law itself, legislative history, the standard of retroactive application, and the cannon of statutory construction all support application of the Public Law to this case.

- The evidence presented to the District court, when analyzed against the ADA standards, clearly qualifies Jenkins as disabled under the ADA.

- Given the extensive record of Jenkins' disability introduced to the District Court, and the application of the ADA standards to that record, Jenkins contends this Court may render a judgment in his favor for reasonable accommodations (time plus ono-half on the USMLE exams). In the alternative, remand to the District Court, with instructions for further proceedings consistent with the proper ADA standards (Public Law No. 110-325), would be appropriate.

## II. PUBLIC LAW NO. 110-325 APPLIES TO THIS CASE.

The Supreme Court set the standard for retroactive application in *Landgraf v. USI Film Products*:

> [T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. . . When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*,

1

> whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.[1]

The only mention of time within Public Law 110-325 is Section 8: "This Act and the amendments made by this Act shall become effective on January 1, 2009."[2] However, "[such effective-clause] language does not, by itself, resolve the question [of whether the act is to apply retroactively]."[3] Therefore, the court must determine whether the statute has retroactive effect.

In the case at bar, Jenkins would have qualified for protective rights under the Americans with Disabilities Act of 1990. However, the Supreme Court in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, decided to unilaterally narrow the definitions and intent of Congress, effectively evicting Jenkins from his protected status.[4]

Congress then passed what is now Public Law 110-325 specifically "[t]o restore the intent and protections of the Americans with Disabilities Act of 1990."[5] Congress was not impairing rights, in fact, it was the opposite. Nor were they increasing liability for past conduct or imposing new duties. Looking to prior versions of the bill supports this view, and is valid evidence for the court to consider.[6] Much like in *Landgraf*, the original House bill here contains language which was ultimately removed. In *Landgraf*, express retroactive language was removed, supporting the analysis that Congress did not intend for it to take retroactive effect.[7]

---

[1] 511 U.S. 244, 280 (1994).
[2] *PL* 110-325, available at http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=110_cong_public_laws&docid=f:publ325.110.pdf.
[3] *Landgraf*, 511 U.S. at 257.
[4] 534 U.S. 184 (2002).
[5] *PL 110-325* in preamble.
[6] *Landgraf*, 511 U.S. at 262..
[7] *Id.*

2

Here, the opposite is true. In House Bill 3195, one of the original purposes was to "provide a *new* definition [for substantially limited]."[8] The section was removed entirely from the final bill and replaced with language of "rejecting" the Supreme Court's standard in *Toyota*, "conveying" congressional intent that the Supreme Court was wrong, and "restoring" the full rights and protections of the ADA.[9] The change illuminates that Congress did not intend this bill to impose a "new" standard, but to only reinforce the original standard implemented that the Supreme Court had misconstrued. Further, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law."[10] Since Public Law No. 110-325 does not have the prohibited retroactive effects a court watches for, the regular presumption against retroactive application does not apply. Also, it would fulfill Congress' intent to remediate *Toyota*'s mistake, by allowing what Congress intended from the beginning to apply in a proper retroactive fashion.

In the alternative, should this Court find that Public Law No. 110-325 does have prohibited retroactive action, the only effect is the "traditional presumption teaches that it does not govern [retroactively] absent clear congressional intent favoring such a result."[11] The textual changes mentioned above support such an intent.[12] Also, there is strong rhetoric from several Congressmen in support of the bill. Representative of California George Miller stated that this bill would cure the "Catch-22 Situation" the Supreme Court has put disabled people in and that

---

[8] *H.B. 3195* [EH], 109th Congress, 2007 (emphasis added).
[9] *PL 110-325*, Section 2(b)
[10] *Warner v. Ashcroft*, 381 F.3d 534 (6th Cir. 2004) (citing *Landgraf*, 511 U.S. at 269).
[11] *Landgraf*, 511 U.S. at 280.
[12] *See H.B. 3195* [EH], 109th Congress, 2007.

3

it was "time to restore the *original intent* of the ADA and ensure that the tens of millions of Americans with disabilities who want to work, attend school, and fully participate in our communities will have the chance to do so."[13] Senator Reid stated, "The ADA Amendments Act finally rights these wrongs [caused by the Supreme Court]."[14] It was Congress' intent that the standards set out in Public Law No. 110-325 were the ones that were to always be used. It was not until the Supreme Court deviated that the most recent action was needed.

In support of both of the above arguments is the cannon of statutory construction that "a court is to apply the law in effect at the time it renders its decision."[15] The effective clause of the statute, which is not dispositive of the retroactive issue, states that the effective date is January 1, 2009. This means that the *Toyota* standard is no longer operative and this Court should apply the statutory standard and congressional intent of Public Law No. 325. This cannon is Constitutional because "[r]etroactivity provisions often serve entirely benign and *legitimate purposes*, whether to respond to emergencies, *to correct mistakes*, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary."[16] The Supreme Court, by its own terms and analysis, has held that the specific rationale behind Public Law No. 325, correcting a mistake, is a legitimate purpose for allowing a statute to apply retroactively and to be applied at the time this Court makes its decision. For all of these reasons, Public Law No. 110-325 should apply to this case.

---

[13] Legislative History, *ADA Amendments Act of 2008* – (House of Representatives – September 17, 2008), available at http://thomas.loc.gov (emphasis added).
[14] Legislative History, *Americans with Disabilities Act Amendments Act* – (Senate – September 26, 2008), available at http://thomas.loc.gov/
[15] *Landgraf*, 511 U.S. at 264 (citing *Bradley v. School Bd. Of Richmond*, 416 U.S. 696, 711 (2006)).
[16] *Id.* at 267-68 (emphasis added).

4

## III. JENKINS QUALIFIES AS DISABLED UNDER PUBLIC LAW NO. 110-325.

As this Court knows, the District Court's Memorandum Opinion and Order, denying Jenkins injunctive relief, was based primarily on *Toyota,* and its progeny.[17] Of course, Public Law No. 110-325 expressly rejected the constraints set forth in these cases, with the instruction that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this Act."[18] Specifically, with respect to *Toyota,* the Public Law states as its purpose, in part, "to reject the standards enunciated by the Supreme Court in [*Toyota*], that the terms "substantially" and "major" in the definition of disability under the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled,' and that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'"[19] Congress found that, as a result of *Toyota,* "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities."[20] Jenkins contends that that is exactly what happened here.

The Public Law defines disability as, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; or (B) a record of such impairment . . ."[21] "Major Life Activities" is defined to include, "learning, reading, concentrating, thinking . . ."[22] "The term 'substantially limits' shall be interpreted consistently

---

[17] 534 U.S. 184.
[18] Pub.L. No. 110-325, § 4(4)(A).
[19] *Id.* at § 2(b)(4).
[20] *Id.* at § 2(a)(6).
[21] Pub.L. 110-325 § 3(a)(1)(A) & (B).
[22] *Id.* at § 4(a)(2)(A).

5

with the findings and purposes of the ADA Amendments Act of 2008."[23] In other words, the term is to be interpreted "in favor of broad coverage. Finally, the Public Law provides that "[t]he determination of whether an impairment substantially limits a major life activity shall be made *without regard to the ameliorative effects of mitigating measures* such as . . . ***reasonable accommodations . . . or . . . learned behavioral or adaptive neurological modifications.***[24]

The Statement of Facts contained in Final Brief of the Appellant, at pages 3 through 13, is an exhaustive listing of the disability evidence proved to the lower court. Briefly, though, Jenkins proved that his learning disability in reading was evident as early as preschool, that he was evaluated by his elementary school psychologist who determined that Jenkins "did not possess the ability to be a reader," and formulated an Individual Education Program to accommodate Jenkins' disability. Throughout his entire academic career, Elementary through High School, undergraduate at University of Wisconsin – Madison, and medical school at the University of Louisville School of Medicine, Jenkins was given the accommodation of extra time to accommodate his reading disability. Likewise, Jenkins received the accommodation of extra time on his fourth attempt at the ACT and also additional time when he took the MCAT. Moreover, throughout the years, Jenkins was evaluated by three separate clinical psychologist, who all provided affidavits to the lower court (one also testified live), all in support of Jenkins learning disability in reading. Dr. Lacy, who testified live, in response to a question from the bench, testified that Jenkins needs one and a half to two times as long to read a given article, as compared to others. Perhaps most probing, Dr. Lacy testified that Jenkins' reading rate is in the

---

[23] *Id.* at §4(a)(4)(B).
[24] *Id.* § 4(a)(3)(E)(i)(emphasis added).

6

bottom one percentile compared to others. In other words, 99 percent of others did better in the test of reading rate.

Indeed, the District Court noted at page 4 of its Memorandum Opinion and Order, that "Jenkins has presented substantial evidence that he is impaired in the ability to process the written word." On page 5, the District Court further noted that "[t]here is ample evidence that Jenkins processes written words slowly, and that this condition prevents him from succeeding where success is measured by one's ability to read under time pressure." Notwithstanding, and with reference to *Toyota,* the District Court denied Jenkins injunctive relief because, according to the District Court, Jenkins did not identify "tasks central to most people's daily lives" where Jenkins was substantially limited.

In fact, the District Court was an active participant, questioning witnesses and opining with both counsel as to the proper standard. The District Court's questions and ultimate ruling were clearly based on the proposition that there is nothing Jenkins cannot accomplish with respect to reading, ***if given extra time to read and comprehend.*** However, Public Law No. 110-325 prohibits consideration of "*the ameliorative effects of mitigating measures* such as . . . ***reasonable accommodations . . . or . . . learned behavioral or adaptive neurological modifications.***"[25] In other words, the fact that Jenkins can accomplish reading *when given extra time* is not the standard; it is not permissible to consider the ameliorative effects of the reasonable accommodations of extra time when assessing a claim of reading disability. A fair reading of the District Court's opinion as well as the transcript of the proceedings demonstrates that the District Court ruled against Jenkins because Jenkins can perform reading tasks *when*

---

[25] *Id.* § 4(a)(3)(E)(i)(emphasis added).

*given extra time.* Indeed the transcript is replete with acknowledgments by the District Court that it takes Jenkins "extra time' on reading tasks. However, the District Court was clear that, because Jenkins can complete reading tasks when given extra time, he cannot qualify as disabled under the ADA. Of course, that is not the proper standard. Without reference to or consideration of the accommodation of extra time, the evidence is overwhelming that Jenkins' major life activity of reading is substantially limited and that he qualifies as disabled under the ADA.

### IV. THE COURT SHOULD EITHER REVERSE AND RENDER IN FAVOR OF JENKINS OR, AT THE VERY LEAST, REMAND FOR FURTHER PROCEEDINGS IN THE DISTRICT COURT CONSISTENT WITH PUBLIC LAW 110-325

The "broad scope of protection intended to be afforded by the ADA" covers Jenkins. Application of Public Law 110-325 to the evidence presented to the District Court results in a finding that Jenkins is entitled to the protection of the ADA and to the reasonable accommodation of extra time on the USMLE exams. Accordingly, the Court should reverse and render that Jenkins is entitled to injunctive relief of the accommodation of time plus one-half on USMLE exams, and remand solely on the issue of Jenkins' reasonable and necessary attorney's fees. In the alternative, the Court should remand with an instruction to the District Court to further proceed consistent with Public Law 110-325.

Dated: January 7, 2009.

Mullin Hoard & Brown, L.L.P.
Vincent E. Nowak, State Bar of Texas No. 15121550
500 South Taylor, Suite 800, LB# 213
P.O. Box 31656
Amarillo, Texas 79120
Phone: (806) 372-5050
Fax: (806) 371-6230

/s/ Vincent E. Nowak
**Counsel for Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2009, a true and correct copy of the above and foregoing was delivered as follows:

**Via E-Mail**
Stephen L. Barker
Katherine M. Coleman
STURGILL, TURNER, BARKER & MOLONEY, PLLC
333 W. Vine Street, Suite 1400
Lexington, KY 40507
sbarker@sturgillturner.com
kcoleman@sturgillturner.com

/s/ Vincent E. Nowak
Vincent E. Nowak