Case No. 08-5371

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**KIRK D. JENKINS**

Plaintiff-Appellant

v.

**NATIONAL BOARD OF MEDICAL EXAMINERS**

Defendant-Appellee

On Appeal from the United States District Court
For the Western District of Kentucky, Louisville
Civil Action No. 3:07CV-698-H
The Honorable John G. Heyburn, II, Chief Judge

# SUPPLEMENTAL BRIEF OF THE DEFENDANT-APPELLEE
# PURSUANT TO PANEL REQUEST DECEMBER 29, 2008

Stephen L. Barker, KBA # 03270
Katherine M. Coleman, KBA # 84089
STURGILL, TURNER, BARKER & MOLONEY, PLLC
333 W. Vine Street, Suite 1400
Lexington, KY 40507
Telephone: (859) 255-8581
Facsimile: (859) 231-0851
sbarker@sturgillturner.com
kcoleman@sturgillturner.com
Counsel for Defendant-Appellee
National Board of Medical Examiners

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION ................................................................................................1

DISCUSSION ......................................................................................................1

    1. The Amendments do not Apply to this Case. ................................................1

    2. Remand to the District Court is not Appropriate. .........................................6

    3. If the Court Decides that the Amendments Apply and Further Decides not to Remand, the Record does not Support a Finding that the Appellant is Disabled Under the Amendments, Much Less a Finding that 50% Extra Testing Time would be a Reasonable Accommodation. .....7

CONCLUSION ..................................................................................................10

CERTIFICATE OF COMPLIANCE ..................................................................11

CERTIFICATE OF SERVICE ...........................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE**

*Combs v. Commissioner of Social Security*, 459 F.3d 640 (6th Cir. 2006) ........ 4-5

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ........................................ 1-2

*Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510 (1994) ............... 2

**STATUTES**

ADA Amendments Act of 2008, Pub. L. No. 110-325 ............................................ 1

ADA Amendments Act of 2008, Sec. 3(1)(A) ........................................................ 7

ADA Amendments Act of 2008, Sec. 3(2) .............................................................. 8

## INTRODUCTION

This matter is an appeal of the district court's Memorandum Opinion and Order dismissing, with prejudice, Appellant's Motion for Preliminary Injunctive Relief, Motion for Temporary Restraining Order and Complaint seeking testing accommodations under the Americans with Disabilities Act (ADA). The district court agreed with Appellee NBME's determination that the Appellant failed to show that he was disabled under the ADA, and, because Appellant (Jenkins) did not meet his initial evidentiary burden, no proof was offered by NBME. Similarly, the court did not address the reasonableness of the accommodation sought by Jenkins.

During the pendency of this appeal, Congress enacted the ADA Amendments Act of 2008, which became effective January 1, 2009. ADA Amendments Act of 2008, Pub. L. No. 110-325 (Amendments). The panel has requested supplemental briefs addressing (1) whether the Amendments apply to this case, (2) whether remand to the district court is appropriate, and (3) whether Appellant qualifies as disabled under the Amendments.

## DISCUSSION

**1.  The Amendments do Not Apply to this Case.**

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court considered whether the provisions of the Civil Rights Act of 1991 could be applied

1

retroactively to claims for violations of Title VII which were pending on appeal at the time the statute was enacted. As here, the statutory change sought to expand the scope of protection afforded by an anti-discrimination statute in response to decisions of the Supreme Court. *Id.* at 250. In relevant part, the *Landgraf* Court held as follows:

> When a case implicates a federal statute enacted after the events ensued, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach ... When ... the statute contains no such expressed command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear Congressional intent favoring such a result.

*Id.* at 280. The Court found that the Civil Acts Act of 1991 would operate retrospectively if it were applied to impose liability for conduct which occurred prior to its enactment. Specifically, the Court found that the Act's creation of a right to compensatory damages impermissibly affected the potential liability of the defendants and was the "type of legal change that would have an impact on private parties' planning." *Id.* at 282-283. Accordingly, the Supreme Court declined to apply the Act retroactively.[1]

---

[1] See also *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 114 S.Ct. 1510 (1994), decided by the Supreme Court on the same day as *Landgraf*, wherein the Court determined that, absent clear congressional intent to the contrary, subsequent legislation "expanding" the Court's prior interpretation of a particular statute will not be retroactively applied.

2

Applying the *Landgraf* analysis here, nothing in the Amendments or their legislative history suggests that Congress intended the legislation to apply retroactively. Thus, it must be determined whether retroactive application of the Amendments will impair rights either party possessed when it acted, increase the NBME's liability for past conduct, or impose new obligations with respect to transactions already completed.

The Amendments impose new standards for regulated entities such as the NBME to use when evaluating requests for accommodations based upon an alleged disability. Appellant's request for testing accommodations was received by the NBME on December 5, 2006. The NBME evaluated his request under the legal standards and requirements applicable at that time. The Amendments changed those standards and requirements by altering the law as it existed and had been definitively interpreted by the U.S. Supreme Court at the time the NBME made its decision.[2]

Assuming Jenkins could establish that he is disabled under the ADA as amended and that his requested accommodation was reasonable, application of the new law to NBME's 2007 determination would impose liability upon NBME for past conduct that was lawful when taken. And although damages are not

---

[2] A renewed application by Jenkins to take the United States Licensing Examination, Step1, with requested accommodation would of course initiate a new evaluation by NBME of Jenkins' request, to be made pursuant to the Amendments. As of January 6, 2009, no such application has been filed.

recoverable in this case under the applicable Title of the ADA, that liability would include monetary exposure because attorneys' fees can be recovered under the ADA and Appellant's original Complaint includes a request for attorneys' fees. (R. 16-3, Complaint, para. 54, d and e, Apx. p. 29.) For these reasons, the Amendments should not be applied retroactively.

In the recent case of *Combs v. Comm'r of Social Security*, 459 F.3d 640 (6th Cir. 2006), this Court considered whether a change in an agency rule governing adjudication of Social Security Disability benefit claims should be applied to a claim filed before the change was made. *Id.* at 642. The regulatory change affected a five-step evaluation process utilized by the Social Security Administration to determine whether claimants satisfied the definition of disability. Before the change, "obesity" was a listed impairment, creating a conclusive presumption that an individual was disabled. *Id.* at 643. The presumption was "designed for administrative workability," and the deletion of that presumption did not change the "ultimate criteria for disability eligibility." *Id* at 647.

Applying *Landgraf*, this Court noted in *Combs* that a statute has impermissible retroactive effect if it "attaches new legal consequences to events completed before its enactment," and that this determination should be guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.* at 646 (citations omitted). *Combs* held that the regulatory

4

amendment in that case had not been impermissibly applied retroactively, because it merely effected a procedural change in how the disability determination would be made, not a change in the substantive requirements for disability eligibility. In the instant case, however, the Amendments effect a change in the substantive requirements for establishing that one has a disability under the ADA, and retroactive application would implicate considerations of notice, reliance and settled expectations. The Congressional revisions broaden the "scope of protection to be available under the ADA," which is clearly a substantive change. When the NBME denied Appellant's request for accommodations in 2007, it reasonably acted in the context of the law as it existed at that time, including rulings of the United States Supreme Court and their progeny, concerning the meaning of "disability" under the ADA.

The ultimate issue in this case is whether NBME acted lawfully when it denied testing accomodations to Mr. Jenkins in 2007. That question can properly be answered only by evaluating NBME's actions against the law in effect when the actions were taken. As this Court noted in *Combs*, application of law existing at the time of the appellate decision would violate the "presumption against retroactivity" if the "statute in question has retroactive effects," and a statute has retroactive effects if it " 'attaches new legal consequences to events completed before its enactment.'" 459 F.3d at 646 (quoting *Landgraf* at 270). That is

5

precisely what would happen here if the Amendments were applied so as to impose liability on NBME for actions taken in 2007 -- actions which the district court correctly held were lawful at the time they were taken.

## 2. Remand to the District Court is Not Appropriate.

For the reasons stated above, this appeal should be determined on the basis of the law existing at the time the NBME decided not to grant Jenkins' application for testing accommodations. As the district court decided the case correctly under the applicable law, this Court should affirm.

As of this writing, Jenkins has not taken the United States Medical Licensing Examination at issue here or reapplied to do so. Should Jenkins submit a new request for accommodations, with any supplemental materials he may wish to add, the NBME will review it in accordance with the Amendments, which have been effective since January 1, 2009. Since the applicable law has changed, this Court's affirmance of the decision below will not preclude Jenkins from proceeding in this manner. Should Jenkins claim he has an urgent need to take the exam, NBME will promptly review any application and render a decision expeditiously.

If this Court concludes that the Amendments apply retroactively, it should remand the case to the district court for further proceedings, including discovery and NBME's presentation of its case in chief. The district court will then have to decide whether Jenkins is disabled under the ADA as amended and, if so, whether

6

the accommodation he requested (50% more testing time than other examinees) is reasonable. Only then can a decision be made regarding the lawfulness of NBME's actions if retroactively judged against the ADA as amended.

### 3. If the Court Decides that the Amendments Apply and Further Decides Not to Remand, the Record does Not Support a Finding that Jenkins is Disabled Under the Amendments, or a Finding that 50% Extra Testing Time Would be a Reasonable Accommodation.

While the Amendments reject the Supreme Court's interpretation in *Toyota Motor Manufacturing, Inc. v. Williams* of certain terms used in the ADA, the Amendments do not alter the definition of "disability" as a "physical or mental impairment that substantially limits one or more major life activities." Amendments at Sec. 3(1)(A). As before, an individual is substantially limited "when the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed **in comparison to most people**." Congressional Record (emphasis added). This legal requirement, unchanged by the Amendments, was not satisfied by the proof offered by Appellant to the district court.[3]

At the hearing, Jenkins and his expert, Dr. Lacy, were given ample opportunity to provide evidence that Jenkins is substantially limited in his ability to perform tasks that constitute major life activities. (R. 35, Memo. Op. & Order, p.

---

[3] NBME has made no determination as to whether Jenkins would satisfy the requirements if he submits a new application with additional supplementary materials.

7

5, Apx. p. 111.) Neither was able to provide any evidence that Jenkins is impaired as compared to most people.

> THE COURT: Well, in an average, everyday person's everyday life, not a medical student, but a person who gets up, goes to work, goes to the store, drives an automobile, you know, reads the newspaper, looks at directions, you know, looks at recipes. Are there things he cannot do?
>
> THE WITNESS [Dr. Lacy]: No.

(R. 34, Trial TR, pp. 42-43, Apx. pp. 371-372.) Dr. Lacy erroneously compared Jenkins to his medical school peers and not to "most people." Moreover, Dr. Lacy acknowledged that his opinion, both as provided to the NBME and as expressed to the court, was based on his assumption that studying in a medical school environment and test taking were major life activities. (R. 34, Trial TR, pp. 39-40, Apx. pp. 368-369). This assumption was invalid under the pre-amendment ADA and <u>remains</u> inconsistent with the definition of major life activities set forth in the Amendments. Amendments at Sec. 3(2). Congress provided an expanded list of major life activities in the Amendments, but it did not include test taking or attending medical school on that list. Jenkins' own testimony offered nothing more than evidence of common reading difficulties experienced by "most people," such as reading scrolling text on television, quickly distinguishing between similarly named street signs when driving, reading texts containing words he has never seen before, or remembering names. (R. 34, Trial TR, pp. 53-54, 80-81, 92,

Apx. pp. 382-383, 409-410, 421.) Jenkins and Dr. Lacy testified that Appellant can accomplish the task of reading in everyday life. (R. 34, Trial TR, pp. 53-54, 56, 62, Apx. pp. 382-383, 385, 391.) Indeed, Jenkins acknowledged that he performed exceptionally well, without accommodation, in high school, taking honors level courses requiring extensive reading. Jenkins admitted that he was able to read everything his classmates read in high school and college, where he took classes that required extensive reading. Jenkins performed at the top of his class in both high school and college. (R. 34, Trial TR, pp. 66, 87, Apx. pp. 395, 416.)

Significantly, Jenkins received average or above-average scores on timed examinations taken without accommodations in high school, such as the PSAT and the ACT. (R. 34, Trial TR, pp. 68-73, Apx. pp. 397-402.) Jenkins' overall performance on a range of cognitive and academic achievement tasks were well within the **average or above average range**. (R. 31-22, Holmes' 1999 and 2003 Evals., Apx. pp. 281-288); (R. 31-23 Lacy's Psychoeducational Report, Apx. pp. 289-292). Application of the Amendments does not alter the conclusion that the limitations identified by Jenkins are simply "not numerous or significant enough in terms of either the number of them or the consequences of them" such that the condition, manner, or duration of Jenkins' ability to read is restricted **in comparison to most people.** (R. 34, Trial TR, pp. 113-114, Apx. pp. 442-443.)

## CONCLUSION

For reasons stated herein and in NBME's final brief, the district court's opinion must be affirmed.

Respectfully submitted,

**STURGILL, TURNER, BARKER & MOLONEY, PLLC**

*/s/ Stephen L. Barker*

Stephen L. Barker, KBA # 03270
Katherine M. Coleman, KBA # 84089
Telephone: (859) 255-8581
Facsimile: (859) 231-0851
sbarker@sturgillturner.com
kcoleman@sturgillturner.com
**Attorneys for Appellee**

g:\wp61\doc\slb\nbme\appeal\suppl brief\supp brief.doc

10

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-page limitation provided by Fed. R. App. P. 32(a)(7) and written instruction from the U.S. Court of Appeals dated December 29, 2008  The foregoing brief consists of 10 or less pages of Times New Roman (14 point) proportional type.  The word processing software used to prepare this brief was Microsoft Office Word 2003.

*/s/ Stephen L. Barker*
Stephen L. Barker
Attorney for Appellee

## **FILING AND MAILING CERTIFICATE**

In compliance with written instructions from the Court, FRAP Rule 25 and L.R. 25, I hereby certify that on the 7th day of January, 2009, this Supplemental Brief for Appellee has been served upon the United States Court of Appeals for the Sixth Circuit, 540 Potter Stewart U.S. Courthouse, 100 E. Fifth Street, Cincinnati, Ohio 45202-3988, by e-mail and/or fax to senior case managers
    Nancy Barnes Nancy_Barnes@ca6.uscourts.gov and
    Patricia Elder Patricia_Elder@ca6.uscourts.gov
and served via first class U.S. Mail and/or e-mail and/or fax this same date from Lexington, Kentucky, one copy to opposing counsel, as follows:

**Vincent E. Nowak, Esq.**
Mullin Howard & Brown, LLP
500 South Taylor, Suite 800
Amarillo, TX 79101

venowak@mhba.com
Fax: (806) 371-6230

*/s/ Stephen L. Barker*
Stephen L. Barker, KBA # 03270
Katherine M. Coleman, KBA # 84089
333 W. Vine Street, Suite 1400
Lexington, KY 40507
Telephone: (859) 255-8581
Facsimile: (859) 231-0851
sbarker@sturgillturner.com
kcoleman@sturgillturner.com
Attorneys for Defendant-Appellee

g:\wp61\doc\slb\nbme\appeal\suppl brief\supp brief.doc