Westlaw.

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 1

HThis case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Sixth Circuit Rule 28. (Find CTA6 Rule 28)

United States Court of Appeals, Sixth Circuit.
Dennis W. VERHOFF, Plaintiff-Appellant/Cross-Appellee,
v.
TIME WARNER CABLE, INC., Defendant-Appellee/Cross-Appellant.
Nos. 07-4265, 07-4348.

Oct. 24, 2008.

**Background:** Terminated employee suffering from severe eczema sued employer under Americans with Disabilities Act (ADA) and Family and Medical Leave Act (FMLA). The United States District Court for the Northern District of Ohio, Carr, Chief Judge, granted employee's summary judgment motion as to FMLA claim and granted in part and denied in part employer's summary judgment motion as to all claims. Both parties appealed.

**Holdings:** The Court of Appeals, Boyce F. Martin, Jr., Circuit Judge, held that:
(1) employee's sleep and ability to care for himself was not substantially limited by his eczema;
(2) employee's eczema did not directly affect his abilities to think, concentrate, or us cognitive processes;
(3) employee gave sufficient FMLA notice;
(4) employee was capable of performing essential functions required of him;
(5) employee's representations in application for Social Security Disability Insurance (SSDI) benefits did not estop his FMLA claim; and
(6) employer was not entitled to jury instruction that employee bore burden of explaining apparent inconsistency between SSDI application and FMLA claim.

Affirmed.

West Headnotes

[1] Civil Rights 78

78 Civil Rights
Terminated employee's sleep was not substantially limited due to his eczema, and thus employee was not disabled for purposes of ADA claim against former employer, although eczema limited employee to five hours of sleep per night, where employee had medication to treat this sleep difficulty. Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101.

[2] Civil Rights 78

78 Civil Rights
Terminated employee's ability to care for himself was not substantially limited due to his eczema, and thus employee was not disabled for purposes of ADA claim against former employer, although employee could not take routine showers, clean around house, or wear clothes and shoes normally due to sensitivity. Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101.

[3] Civil Rights 78

78 Civil Rights
Terminated employee's eczema did not directly affect or substantially impair his abilities to think, concentrate, or use cognitive processes, even assuming that these constituted major life activities, and thus employee was not disabled for purposes of ADA claim against former employer; employee alleged only that his eczema was so distracting as to impair his abilities. Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101.

[4] Labor and Employment 231H

231H Labor and Employment
Terminated employee gave sufficient FMLA notice, as required to state prima facie case for FMLA interference, despite argument that note from employee's doctor failed to explain why employee needed FMLA leave, as it only stated that he could not work more than forty-hours per week; employee was only re-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 2

quired to provide employer enough information to reasonably conclude that an event described in FMLA had occurred. Family and Medical Leave Act of 1993, § 102(s)(1)(D), 29 U.S.C.A. § 2612(s)(1)(D); 29 C.F.R. § 825.302(d).

[5] Labor and Employment 231H ⚖0

231H Labor and Employment
Working more than full-time could not logically be an essential part of employee's job under the FMLA, and thus terminated employee could have performed the essential functions required of him, although he had not been able to work standby hours required of similar employees; employee could have worked forty hours, including standby hours, had informally worked with an arrangement in which he could get other employees to cover his standby hours for four years prior to the current dispute, and for at least two of those years employer explicitly knew of employee's condition. Family and Medical Leave Act of 1993, § 102(b)(1), 29 U.S.C.A. § 2612(b)(1).

[6] Labor and Employment 231H ⚖0

231H Labor and Employment
Representations made by terminated employee in application for Social Security Disability Insurance (SSDI) benefits, which are available to disabled persons who are unable to perform work, did not estop his claim under FMLA, although FMLA did not specifically use term "reasonable accommodation," FMLA's provisions entitling employees to work intermittently or with a reduced leave schedule when medically necessary had the same effect, and SSDI applicants were not required to refer to reasonable accommodation. Family and Medical Leave Act of 1993, § 2, 29 U.S.C.A. § 2601; Social Security Act, § 223(d)(2)(A), 42 U.S.C.A. § 423(d)(2)(A).

[7] Labor and Employment 231H ⚖0

231H Labor and Employment
Former employer was not entitled to jury instruction that terminated employee bore burden of explaining apparent inconsistency between his FMLA claim and his receipt of Social Security Disability Insurance (SSDI) benefits; this apparent contradiction was extensively discussed in the jury's presence, and employer cannot use the mere fact that the jury returned a verdict for employee as evidence that the explanation was insufficient. Family and Medical Leave Act of 1993, § 2, 29 U.S.C.A. § 2601; Social Security Act, § 223(d)(2)(A), 42 U.S.C.A. § 423(d)(2)(A).

On Appeal from the United States District Court for the Northern District of Ohio.

Before MARTIN, ROGERS, and SUTTON, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.
*1 Dennis Verhoff appeals the district court's decision to grant defendant Time Warner Cable, Inc.'s motion for summary judgment on his claim for disability-discrimination under the Americans with Disabilities Act. 42 U.S.C. § 12101. Time Warner cross-appeals the district court's decision to grant Verhoff's motion for summary judgment on his claim for interference with his rights under the Family Medical Leave Act. 29 U.S.C. § 2601. We affirm both judgments.

I.

Verhoff suffers from eczema-also known as atopic dermatitis-which is a chronic skin condition marked by visible, irritating skin rashes. From 2000 to 2004, Verhoff worked for Time Warner performing cable installations and personal computer support. Verhoff claims that, due to his condition, he cannot work more than forty hours a week. Throughout his employment, Time Warner has required its installers to work overtime on a "standby" basis, where the employee handles after-hours service calls. During his first couple of years with the company, Time Warner informally accommodated Verhoff's inability to work more than forty hours by allowing him to give some of his standby shifts to others.

But in March 2004, when Verhoff gave his supervisor a doctor's note which formally restricted him to forty hours of work per week, his manager told him that working overtime was an essential aspect of his job. That same day, a Time Warner agent cleaned out Verhoff's company vehicle and sent him home. And two days later, his manager told him that, unless he obtained a full release from his doctor stating that he could work overtime, he could not work in his current position. Verhoff then submitted a formal FMLA request form, but instead of checking the box for in-

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 3

termittent or reduced work schedule leave, he checked the box for block leave, which Time Warner granted. Upon his return, Verhoff continued to insist that his work week be limited to forty hours. Time Warner was unwilling to compromise, however, and fired him.

Verhoff sued, alleging: (1) disability-discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12117 and the Ohio Revised Code, §§ 4112.02 and 4112.99; (2) interference with his rights under the Family Medical Leave Act, 29 U.S.C. § 2601; and (3) retaliatory discharge in violation of the FMLA. *Id.* Time Warner moved for summary judgment on each claim and Verhoff moved for partial summary judgment as to Time Warner's liability on his FMLA-interference claim. The district court granted Time Warner's motion as to Verhoff's ADA and FMLA-retaliation claims,[FN1] and granted Verhoff's motion on his FMLA-interference claim. A jury trial on damages was scheduled for December 2006, but, before trial, the parties entered into an agreed order and the district court granted Verhoff's motion for liquidated damages under the FMLA. A jury eventually awarded Verhoff $56,617.50 in back pay. Verhoff now appeals the court's grant of Time Warner's motion for summary judgment on his ADA disability-discrimination claim. Time Warner cross-appeals the court's grant of summary judgment to Verhoff on his FMLA-interference claim.

II.

*2 The standard of review for summary judgment is de novo. *Saroli v. Automation & Modular Components, Inc.,* 405 F.3d 446, 450 (6th Cir.2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). This Court must accept the nonmoving party's evidence, and draw all justifiable inferences in their favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

III.

We first address whether Verhoff was "disabled" under the ADA. The ADA prohibits employers from discriminating against a "qualified individual" because of their disability. 42 U.S.C. § 12112(a). Such disabled but "qualified" employees are those "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."42 U.S.C. § 12111(8). An employer discriminates against these employees when it does "not make reasonable accommodations to the known physical or mental limitations of the individual," unless it can "demonstrate that the accommodation would impose an undue hardship on the operation" of its business. 42 U.S.C. § 12112(b)(5)(A).

To establish a prima facie case for ADA disability-discrimination, a plaintiff must prove that "(1) he or she is disabled; (2) otherwise qualified for the position with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Timm v. Wright State Univ.,* 375 F.3d 418, 423 (6th Cir.2004). The first element-whether Verhoff's eczema rendered him "disabled" under the ADA-is the issue upon which the district court granted Time Warner's motion.

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."42 U.S.C. § 12101(2). Further, "that the Act defines 'disability' 'with respect to an individual' makes clear that Congress intended the existence of a disability to be determined in [a] case-by-case manner." *Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184, 199, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (internal citation omitted). So the question is whether Verhoff's chronic eczema "substantially limited" one or more of his "major life activities ." "Major life activities" include "activities that are of central importance to daily life," *id.* at 198, and they are "substantially limited" when the impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."The limitation "must also be permanent or long-term." *Id.* at 691.The EEOC's regulations define "substantially limited" as: "Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 4

duration under which the average person in the general population can perform that same major life activity."29 C.F.R. § 1630.2(j).[FN2] On appeal, Verhoff argues that his eczema substantially limits his ability to (A) sleep, (B) care for himself, and (C) think, concentrate, or perform other mental processes, and further that all three are major life activities.

*A. Sleep*

*3 [1] We think that sleep is a major life activity. *Boerst v. General Mills Operations*, 25 Fed.App'x. 403, 406 (6th Cir.2002); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999); *see also Swanston v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir.2001) (assuming, without deciding, that sleep is a major life activity). Verhoff argues that his eczema substantially limits the amount of sleep he can get, and the district court found that Verhoff's eczema limits him to roughly five hours of sleep per evening. But our cases have held that this does not amount to a substantial limit. In *Swanston*, 268 F.3d at 316, we stated that "[w]hile less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population." Verhoff also argues that, regardless of the amount of sleep he actually gets, his sleep is not restful. Yet, as the district court found, Verhoff has medication to treat this sleep difficulty-which we must take into account under *Sutton v. United Air Lines*, 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)-and thus we agree with the district court that Verhoff's sleep is not substantially limited.[FN3]

*B. Caring for oneself*

[2] Caring for oneself is a major life activity. *Cehrs v. Northeast Ohio Alzheimer Research Center*, 155 F.3d 775, 781 (6th Cir.1998); 29 C.F.R. § 1630.2(i). Verhoff argues that his eczema substantially limits his ability to care for himself because he cannot take routine showers or clean around the house due to his skin's extreme sensitivity to soap, and he says that he cannot wear clothes or shoes normally because of the constant contact with his skin. In support of his claim, Verhoff cites our decision in *Cehrs,* where, in allowing a plaintiff's ADA claim to proceed to a jury, we observed that there was "no cure" for her psoriasis, that "[e]ven during the dormant stage of the impairment, Cehrs experience[d] pain," that her "psoriasis cause[d] persistent skin irritations, [and that] Cehrs [was] constantly afraid of other people's reactions to her condition." *Cehrs*, 155 F.3d at 781 ("Her entire appearance, including the clothes she wears, is dictated by her psoriasis.").

Yet in *Cehrs* we said more than that. Cehrs's disease was "life-threatening," and the medication she took to treat it "sometimes cause[d] her to lose her hair and fingernails."*Id.* Verhoff's condition is not nearly so severe. And, although not binding, our unpublished cases have set a similarly high standard. For example, in one case the fact that a plaintiff's allergies affected him to such a degree that his wife had to fasten his pants for him was insufficient as a matter of law to prove that the impairment created a substantial limit on his ability to care for himself. *Cantrell v. Nashville Electronic Serv.*, 1999 WL 68571, at *3 (6th Cir.1999). We thus agree with the district court that Verhoff made an insufficient showing that his ability to care for himself was substantially limited.

*C. Thinking, concentrating, and cognitive processes*

*4 [3] The district court, in reliance on statements made in *Boerst* and another unpublished opinion, *Hill v. Metro. Gov't of Nashville*, 54 Fed.App'x. 199, 201 (6th Cir.2002), held that thinking and concentrating were not major life activities. But other circuits have held that thinking is a major life activity, *e.g. Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061 (9th Cir.2005), and we agree that it seems a bit bizarre to flatly say that thinking-the very activity that makes us human-is not "major" enough. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir.1999) ( "[M]ost objections about the broadness of thinking as a life activity can be captured in the analysis of when the activity is substantially limited."). But we do not have to decide today whether thinking, concentrating, or cognitive processes generally constitute major life activities, because, even assuming they do, Verhoff's eczema does not substantially limit Verhoff's ability to engage in them.[FN4]

Here, although Verhoff argues that his cognitive processes are impaired because his ailment is so distracting, his claim significantly differs from those brought by successful plaintiffs. In those cases, the plaintiffs argued that their impairments *directly* affected their ability to think, learn, or concentrate. *E.g., Head,* 413 F.3d at 1061 (holding that plaintiff

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 5

suffered a substantial impairment in his ability to think because his bipolar disorder limited his memory and ability to focus). Because Verhoff's eczema does not directly affect his cognitive processes, he has not shown that his eczema imposes a substantially limitation.

So the district court properly granted summary judgment to Time Warner on Verhoff's ADA discrimination claim. But, as previously noted, Congress has recently enacted significant changes to the ADA. **ADA Amendments Act** of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008). Although these changes do not affect our decision today, we make three observations. First, there is no longer any dispute that "sleeping" and "thinking" are major life activities. Congress has expanded the class of major life activities to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."*Id.* at § 3(2)(A).

Second, we relied on *Sutton,* 527 U.S. at 482, to find that Verhoff's inability to sleep well was largely ameliorated by his use of sleep medication. But Congress has explicitly rejected the *Sutton* Court's reasoning, and, the ADA, as amended, now states that the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as ... medication."[FN5]Pub.L. No. 110-325, § 3(4)(E)(i). Third and finally, Congress outright rejected the Supreme Court's directive in *Toyota,* 534 U.S. at 196, that the ADA's terms should be "interpreted strictly to create a demanding standard for qualifying as disabled."Instead, Congress now tells us that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this Act."Pub.L. No. 110-325, § 4(4)(A).

IV.

*5 Before we get to the merits of Verhoff's FMLA-interference claim, we must address two procedural matters: First, Verhoff argues that Time Warner failed to properly preserve its cross-appeal; second, Verhoff argues that Time Warner is prevented from appealing because the parties stipulated that Verhoff was the "prevailing party" in the agreed order that they signed.

*A. Procedural Claims*

Verhoff claims that Time Warner failed to preserve its appeal because it only appealed from the district court's final judgment entry rather than specifically from the district court's partial summary judgment ruling or the agreed order. This argument fails because "a notice of appeal that names only a post-judgment decision may extend to the judgment itself if it can be reasonably inferred from the notice of appeal that the intent of the appellant was to appeal from the final judgment and it also appears that the appellee has not been misled." *United States v. Grenier,* 513 F.3d 632, 635 (6th Cir.2008) (internal quotations omitted) (citing *Harris v. United States,* 170 F.3d 607, 608 (6th Cir.1999)). And in determining the basis for an appeal, "courts have relied upon briefs and other subsequent filings to infer the intent of the appellant." *Grenier,* 513 F.3d at 635. This Court may thus review issues related to the interference claim because Time Warner appealed from the final judgment entry, the other rulings were all prior non-final orders, and Time Warner's brief put Verhoff on notice that its appeal encompassed these other claims.

Verhoff also argues that Time Warner cannot challenge the district court's grant of summary judgment to Verhoff on his FMLA-interference claim because it stipulated in an agreed order between the parties that Verhoff was the "prevailing party." This argument misconstrues the effect of an agreed order: an agreed order stipulation is not automatically binding on appeal unless there is an estoppel hook to hang it on. *See Teledyne Indus. v. NLRB,* 911 F.2d 1214, 1217 (6th Cir.1990) (holding agreed order not binding on NLRB on appeal). Judicial estoppel bars parties from "taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding," and its purpose is to prevent "a party from abusing the judicial process through cynical gamesmanship, [by] achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id.* at 1218.The obvious problem for Verhoff then is that Time Warner did not *succeed* on this claim, and any "judicial acceptance" (or reliance thereon) came in the form of the district court's ruling in favor of Verhoff. We thus proceed to the merits.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 6

*B. Merits*

The FMLA provides eligible employees of a covered employer the right to take unpaid leave totaling up to twelve work weeks in any twelve-month period for, among other things, a "serious health condition." 29 U.S.C. § 2612(a)(1). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."29 U.S.C. § 2611(11). After the leave period, an employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of employment that existed prior to exercising leave. 29 U.S.C. § 2614(a). To give these guarantees meaning, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided."29 U.S.C. § 2615(a)(1). Employers who violate section 2615 are "liable to any eligible employee affected" for damages and appropriate equitable relief, 29 U.S.C. § 2617(a)(1), and the type of leave that may be taken is not limited to "block leave," and may instead be taken "intermittently or on a reduced leave schedule" when such leave is "medically necessary." 29 U.S.C. § 2612(b)(1); 29 C.F.R. 825.203(a) ("A reduced leave schedule is a leave schedule that reduces an employee's usual number of working hours per workweek, or hours per workday.").

*6 Time Warner makes three arguments: (1) that Verhoff has not satisfied the prima facie elements of his claim because his written notice to Time Warner was insufficient, (2) that he cannot perform an "essential function" of his job because he cannot work more than forty hours per week, and (3) that even if he can perform the "essential functions" of his job, he is nonetheless estopped from so arguing because of statements he made in his application for Social Security Disability Insurance benefits.

*1. Did Verhoff provide sufficient FMLA-Notice?*

To succeed on an FMLA-interference claim, Verhoff must prove that: "(1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled." *Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir.2005)*. The first three elements and the fifth element are not in question, so the issue is whether Verhoff provided proper notice to Time Warner. For notice, the "critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir.1998)*.

[4] Time Warner argues that the note from Verhoff's doctor failed to explain why he needed FMLA leave, as it only stated that he could not work more than forty-hours per week. But, an employee need not "expressly assert rights under the FMLA or even mention the FMLA,"29 C.F.R. § 825.302(d), though he must give "the employer enough information for the employer to reasonably conclude that an event described in FMLA § [2612(s)(1)(D) ] has occurred." *Walton,* 424 F.3d at 486;*see also Brenneman v. MedCentral Health Sys., 366 F.3d 412, 423-24 (6th Cir.2004)* (holding doctor's note sufficed as FMLA-notice). Indeed, this case stands in sharp contrast with cases where the plaintiff merely alerted his employer that he "twisted his knee," *Walton,* 424 F.3d at 487, or was "sick," *Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir.2001)*. Verhoff not only provided corroborative evidence from a doctor, but, as the district court observed, Time Warner knew that he had a chronic condition even before it received his doctor's note (as it informally accommodated his illness for several years), and his chronic skin illness was actually visible to his employer. So Verhoff gave sufficient FMLA-notice, and we thus find that he has established his prima facie case for FMLA-interference.

*2. Can Verhoff perform the "essential functions" of his job?*

[5] After FMLA leave, employees who remain "unable to perform an essential function of the position because of a physical or mental condition [have] no right to restoration to another position under the FMLA."29 C.F.R. § 825.214(b)."[A]n employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work." *Edgar v. JAC Prods., 443 F.3d 501, 514 (6th Cir.2006)*. In

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 7

other words, the FMLA does not require an employer to retain an employee who cannot do his job. Both sides here agree that Verhoff cannot work more than forty-hours a week. Although this has meant in the past that Verhoff has been unable to work standby, he argues that he could work the required standby hours so long as his total hours did not add up to more than forty per week.

*7 The question then is whether working more than forty-hours a week is an essential function of working as a cable technician. In defining what is an "essential function" of a job, the FMLA regulations incorporate by reference the definition of "essential function" found in the ADA's regulations, which in turn tell us that the "term 'essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2.[FN6]

As the regulations indicate, the typical case where an employee cannot perform the "essential functions" of her job involves a plaintiff whose disability physically limits her ability to do her job's routine tasks, such as a packager who can no longer lift heavy packages because of a neck injury. *Hendrixson v. BASF Constr. Chems., LLC,* 2008 U.S. Dist. LEXIS 63771 (W.D.Mich. Aug. 20, 2008). Yet it is a relatively open question whether hours and scheduling availability can be an "essential function" of a job. In *Brenneman v. Medcentral Health System,* 366 F.3d 412, 428-421 (6th Cir.2001), we held that a plaintiff could not perform the essential functions of his job because he could not attend work regularly. Going a step further, the Eighth Circuit has held that an employee who could work full-time-but only the day-shift rather than either the day-shift or night-shift-could not perform the essential functions of his job. *Rehs v. IAMS Co.,* 486 F.3d 353 (8th Cir.2007).

We agree with the district court, however, that Verhoff can perform the essential functions required of him. Both parties agree that Verhoff can work at least forty-hours, and although he has not worked the standby hours required of other cable technicians, he says he could do so as long as his total hours did not exceed forty per week. Moreover, he worked with this arrangement, albeit informally, for four years prior to the current dispute, and for at least two of those years Time Warner explicitly knew of his condition. And because the FMLA expressly contemplates that employees who are otherwise capable are entitled to work their jobs either "intermittently or on a reduced leave schedule" when "medically necessary," 29 U.S.C. § 2612(b)(1), working more than full-time cannot logically be an essential part of one's job under the FMLA.

*3. Does Verhoff's receipt of SSDI benefits bar his FMLA claim?*

[6] Time Warner makes the further argument that, because of representations Verhoff made in his application for Social Security Disability Insurance benefits, he is estopped from now claiming that he is capable of performing the essential functions of his job. Specifically, an apparent incongruity arises because the Social Security Disability Insurance program provides benefits to disabled persons who are "unable to do [their] previous work" and "cannot ... engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In *Cleveland v. Policy Management System Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), the plaintiff had successfully filed an application for SSDI benefits and was pursuing an ADA claim. In reviewing the apparent tension between the two, the lower court erected a rebuttable presumption against the plaintiff's recovery, reasoning that a representation to SSDI that she was "unable ... to work" was inconsistent with her concurrent claim that she could successfully perform the essential functions of her job in her ADA claim. The Supreme Court unanimously rejected this, observing that there was no "inherent conflict" because the SSDI did not take into account whether someone could do their work with a "reasonable accommodation." *Id.* at 802.

*8 Here, the district court reasoned that *Cleveland's* rationale extends to Verhoff's FMLA claim, as it found no inherent incompatibility between Verhoff's claim and his receipt of SSDI benefits. On appeal, Time Warner argues that *Cleveland's* rationale should not extend to the FMLA context because that Act does not specifically discuss "accommodations." But this view is too narrow. *Cf. Detz v. Grenier Indus. Inc.,* 346 F.3d 109 (3d Cir.2003) (extending *Cleveland* to conflicts with the SSDI and an ADEA claim). Although the FMLA does not specifically use the

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 8

term "reasonable accommodation," its provisions entitling employees to work "intermittently or with a reduced leave schedule" when "medically necessary" have much the same effect-at least in this case-as do the ADA's provisions that define a "qualified employee" as one who can perform the essential functions of his job with a "reasonable accommodation." Further, as observed above, the FMLA and ADA regulations share a common definition of "essential function," and the SSDI "does *not* take the possibility of 'reasonable accommodation' [or intermittent leave or a reduced work schedule] into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cleveland*, 526 U.S. at 802 (emphasis in original). So *Cleveland's* logic extends to the apparent tension between Verhoff's FMLA-interference claim and his receipt of SSDI benefits and we hold that he is not estopped from succeeding on his FMLA claim.

[7] Finally, Time Warner argues that, if *Cleveland's* rationale extends to the FMLA context, the district court failed to properly instruct the jury that Verhoff bore a burden of explaining away the apparent inconsistency between his FMLA claim and his receipt of SSDI benefits. And Time Warner is right that the plaintiff bears some burden: in *Cleveland,* the Supreme Court stated that a "plaintiff bears the burden of proving" that she, "with or without reasonable accommodation, can perform the essential functions of her job," and "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland,* 526 U.S. at 806 (citation omitted). But Time Warner reads too much into this. There is no need to require a separate jury instruction that places a unique burden on the plaintiff; indeed, such a requirement too closely tracks the very approach the Supreme Court rejected in *Cleveland:* the imposition of a rebuttable presumption. The record here reflects that this "apparent contradiction" was extensively discussed in the jury's presence, and Time Warner cannot use the mere fact that the jury returned a verdict for Verhoff as evidence that the explanation was insufficient. So the district court properly held both that Verhoff established the prima facie elements of his FMLA-interference claim and that he was neither incapable of performing the essential functions of his job nor estopped from so claiming.[FN7]

V.

*9 For the foregoing reasons, we AFFIRM the judgment of the district court granting summary judgment to Time Warner on Verhoff's ADA claim, and we AFFIRM the judgment of the district court granting summary judgment to Verhoff on his FMLA-interference claim.

> FN1. Verhoff does not appeal the district court's decision on his FMLA-retaliation claim.
>
> FN2. Congress has recently enacted major changes to the ADA. Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008). Although these amendments do not control this case, we note that Congress has expressly rejected the EEOC's regulations that "defin[e] the term 'substantially limits' as 'significantly restricted' " because that definition "express[es] too high a standard" and is "inconsistent with congressional intent." *Id.* at § 2(a)(9). The amendments further reject the Supreme Court's directive that the ADA's terms should be "interpreted strictly," *Toyota,* 534 U.S. at 196, and, going forward, Congress has instructed courts that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this Act." Pub.L. No. 110-325, § 4(4)(A).
>
> FN3. In its recent amendments to the ADA, Congress expressly rejected *Sutton's* instruction that courts must consider the effects of all ameliorative medications and devices when they determine whether a plaintiff is disabled under the ADA. Amendments Act of 2008, Pub.L. No. 110-325, § 3(4)(E)(i), 122 Stat. 3553 (2008) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as ... medication[.]").
>
> FN4. We also note that Congress has now made clear its view that, going forward, "thinking" and "concentrating" are major life activities. **ADA Amendments Act** of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32
(Not Selected for publication in the Federal Reporter)
(Cite as: 2008 WL 4691794 (C.A.6 (Ohio)))

Page 9

2008, Pub.L. No. 110-325, § 3(2)(A), 122 Stat. 3553 (2008).

FN5. The full text prevents a court from taking into consideration the effects of "(I) medication, medical supplies, equipment or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies; (II) use of assistive technology; (III) reasonable accommodations or auxiliary aids or services; or (IV) learned behavioral or adaptive neurological modifications."Pub.L. No. 110-325, § 3(4)(E)(i). However, while Congress overturned the Supreme Court's reasoning in *Sutton,* it nevertheless left its holding intact by ordering courts to consider the "ameliorative effects of the mitigating measures of ordinary eyeglasses or contact lenses."*Id.* at § 3(4)(E)(ii).

FN6. In addition, the regulations say that a function may be essential because "the reason the position exists is to perform that function" and "the incumbant is hired for his or her expertise or ability to perform the particular function."29 C.F.R. § 1630.2. Evidence of whether a function is essential includes the "employer's judgment," "written job descriptions," the amount of time spent performing the function, and the "consequences of not requiring the incumbant to perform the function."*Id.*

FN7. Time Warner also challenges the jury award on a variety of other grounds. The district court did not abuse its discretion in concluding that these challenges do not entitle Time Warner to a new damages trial, and we therefore affirm the jury award.

C.A.6 (Ohio),2008.
Verhoff v. Time Warner Cable, Inc.
Slip Copy, 2008 WL 4691794 (C.A.6 (Ohio)), 21 A.D. Cases 409, 38 NDLR P 32

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.